E-FILED
Thursday, 06 April, 2017  02:22:43 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

|  |  |
|---|---|
| **JAMES H. FISHER,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 16-2041** |
| **NANCY A. BERRYHILL,**<br>**Acting Commissioner of Social Security,** | |
| **Defendant.** | |

## REPORT AND RECOMMENDATION

Plaintiff James H. Fisher seeks review under 42 U.S.C. § 405(g) of the Social Security Administration's denial of his application for disability insurance benefits and supplemental security income. The parties have filed cross motions for summary judgment. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#10)** be **DENIED**, Defendant's Motion for Summary Judgment **(#14)** be **GRANTED**, and that the decision to deny benefits be affirmed.

### I.   Background

On May 24, 2012, Plaintiff filed an application for disability insurance benefits, alleging disability beginning April 10, 2010. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff filed a request for hearing and on June 17, 2014, Plaintiff appeared for a hearing before an Administrative Law Judge (ALJ). During the hearing, the ALJ heard testimony from Plaintiff, Plaintiff's friend Kashelle Ann Vermood, and an impartial vocational expert.

On August 14, 2014, the ALJ issued an unfavorable decision. (R. 25-40.) The ALJ found that Plaintiff has the severe impairments of status post aortic dissection, hypertension, peripheral neuropathy, chronic kidney disease stage III, and obstructive sleep apnea. (R. 27.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.152). (R. 28.) Additionally, the ALJ found that Plaintiff has the residual functional capacity (RFC) to

> perform sedentary and light work as defined in 20 CFR 404.1567(b) except he can only occasionally climb ramps and/or stairs, balance, stoop, kneel, and crawl; he cannot climb ladders, ropes, or scaffolds; he must avoid exposure to hazards such as dangerous machinery and unprotected heights; he cannot operate a motor vehicle; he must avoid concentrated exposure to extreme heat, humidity, and direct sunlight; his work must be indoors; he can perform frequent, but not constant, operation of foot controls with the right lower extremity.

(R. 28-29.) The ALJ found that Plaintiff is able to perform his past relevant work as a customer service representative and that there are other jobs existing in significant numbers in the national economy that Plaintiff is also able to perform. (R. 38.) Plaintiff filed a Request for Review, which the Appeals Council denied, making the ALJ's ruling the Commissioner's final decision.

## II.   Standard of Review

In reviewing the ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Importantly, in order for the Court to evaluate the ALJ's analysis, the ALJ must build a "logical bridge from the evidence to his conclusion." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

## III.   Analysis

### a.  Listing 4.10

Plaintiff first argues that the ALJ erred in not analyzing whether Plaintiff met Listing 4.10. To meet Listing 4.10, Plaintiff must have an "Aneurysm of aorta or major branches, due to any cause (e.g., atherosclerosis, cystic medial necrosis, Marfan syndrome, trauma), demonstrated by appropriate medically acceptable imaging, with dissection not controlled by prescribed treatment (see 4.00H6)." 20 C.F.R. Pt. 404, Subpart P, App. 1, §4.10. Listing 4.00H6 finds that a dissection is not controlled by prescribed treatment when, "you have persistence of chest pain due to progression of the dissection, an increase in the size of the aneurysm, or compression of one or more branches of the aorta supplying the heart, kidneys, brain, or other organs." 20 C.F.R. Pt. 404, Subpart P, App. 1, §4.06.

Plaintiff suffered an acute aortic dissection on August 13, 2010, and had emergent replacement and repair. Since the date of that surgery, there is nothing in the record suggesting that Plaintiff suffered from "persistence of chest pain due to progression of the dissection, an increase in the size of the aneurysm, or compression of one or more branches of the aorta supplying the heart, kidneys, brain, or other organs." As there was nothing in the record to suggest that Plaintiff met Listing 4.10, it was reasonable for the ALJ to not discuss this listing.

### b.  Blood Pressure Evidence

Next, Plaintiff disputes the ALJ's findings that Plaintiff's blood pressure was well controlled with medication. Plaintiff argues that even while he was prescribed and taking blood pressure medication, his blood pressure still went up and down every 12 hours. Plaintiff first states that Plaintiff's blood pressure "has never been 120/80 which is normal." Plaintiff goes on to list numerous blood pressure ratings. Many of the ratings were below 120/80, and were acceptable to his physicians. (See R. 349, 351, 356, 368.) At times, Plaintiff's physicians even remarked that his blood pressure was "excellent." (R. 326, 359, 370 445, 447.) The ALJ also specifically considered the occasions in the record where Plaintiff's blood pressure level was elevated, and noted that on those occasions, Plaintiff reported that he had not taken his medication yet that

day. (R. 33, 386-87, 451-52, 425-26.) *See Sims v. Barnhart*, 309 F.3d 424, 430 (7th Cir. 2002)(finding it was proper for the ALJ to consider that the plaintiff's reported high blood pressure readings were on days that the plaintiff failed to take her medication). It is proper for the ALJ to consider evidence showing that a medical condition is controlled by medication. *See id.* (finding that the ALJ did not err when relying on a physician's conclusion that the plaintiff's hypertension was controllable by medication). Here, it was reasonable for the ALJ to consider that Plaintiff's blood pressure ratings became controlled once Plaintiff started the prescribed medication.

Plaintiff also cites to evidence presented by Plaintiff's neighbor, Kashelle Burmood, an LPN who checked on Plaintiff often. Ms. Burmood checked Plaintiff's blood pressure almost every time she saw him and reported that he typically had high ratings similar to 150 over 92 or 94. While Ms. Burmood is an LPN, she is not an acceptable medical source under the Regulations and was not treating Plaintiff. 20 C.F.R. § 404.1513. In evaluating Ms. Burmood's testimony, the ALJ fairly considered that Ms. Burmood's testimony was not supported by the medical record, as Plaintiff's blood pressure ratings in physician offices were consistently acceptable when he took his medication.

The record shows that Plaintiff's blood pressure was controlled after his surgery when he took his medication as prescribed. The Court does not find reversible error.

### c. Dr. Bonnie Smith

Plaintiff also argues that the ALJ erred in rejecting the conclusions of treating physician, Dr. Bonnie Smith. Dr. Smith is Plaintiff's primary care physician and she submitted a form and a letter describing Plaintiff's limitations. The ALJ gave these opinions little weight, which Plaintiff argues was in error.

The ALJ must give controlling weight to a treating source's opinion if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Punzio v. Astrue*, 630 F. 3d 704, 710 (7th Cir. 2011) (citing § 404.1527(c)). An ALJ may decide not to give a treating physician's medical opinion controlling weight "if it is inconsistent with the opinion of

a consulting physician, or when the treating physician's opinion is internally inconsistent." *Skarbek v. Barnhart*, 390 F. 3d 500, 503 (7th Cir. 2004). As the Seventh Circuit has noted, "[t]he patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985).

Dr. Smith submitted a letter stating the Plaintiff should be:

> limited to sedentary work with no standing or walking greater than 2 to 3 hours out of an 8 hour period but not intermittently. In addition, his lifting should be less than 20 pounds on an occasional basis, that being up to 1/3 of an 8 hour day. Due to the hypertension and the medications used for the hypertension, it is reasonable to conclude he would need at least 2 to 3 hours of breaks during an 8 hour period of time.

(R. 551.) At the hearing, however, Plaintiff's attorney acknowledged that he dictated this letter and had Plaintiff take the letter to Dr. Smith to see if she would agree to these restrictions. (R. 51.) The ALJ found that this "substantially reduces the reliability of these particular limitations, as they do not represent Dr. Smith's own formulation of the claimant's abilities based on clinical evidence, but rather are a more passive endorsement of the limitations proposed by another." (R. 36.)  The ALJ also noted that Dr. Smith's letter listed the occasions where Plaintiff's blood pressure was elevated, but Dr. Smith failed to list the numerous times where Plaintiff had normal or acceptable blood pressure ratings. (R. 36.) The ALJ was reasonable to conclude that Plaintiff's attorney cherry picked evidence from the record to put into the letter. Due to the unreliability of the letter, the Court does not find reversible error in the ALJ's decision to give Dr. Smith's letter little weight.

Dr. Smith also submitted a form, noting that Plaintiff suffers from fatigue and cognitive limitations due the blood pressure medication. (R. 396.) The ALJ gave this form little weight, finding it inconsistent with Dr. Smith's own examinations. As noted, an ALJ may choose to give a treating physician's opinion less weight if it is inconsistent

with the treating physician's own treatment notes. *Skarbek v. Barnhart*, 390 F. at 503. Dr. Smith's form stated that Plaintiff has serious limitations in his ability to "independently initiate, sustain, or complete tasks" and to "understand, carry out and remember instructions on a sustained basis" due to his blood pressure medication. However, Dr. Smith's form also notes that Plaintiff succeeded in answering all of Dr. Smith's questions aimed at testing sensorium and mental capacity. Plaintiff was able to do multiple mathematical calculations, name five large cities, and name the last three presidents. (R. 394.) Dr. Smith described Plaintiff's thought process as logical and coherent. (R. 394.) The ALJ was reasonable to find that Dr. Smith's conclusion as to Plaintiff's cognitive ability was not supported by Dr. Smith's own examination and testing.

The ALJ thoroughly analyzed Dr. Smith's opinion and treatment records and gave good reason, supported by the record, for discounting Dr. Smith's opinion. The Court therefore does not find reversible error.

### d. Credibility

Finally, Plaintiff argues that the ALJ erred in relying on Plaintiff's inconsistencies in rejecting Plaintiff's subjective symptoms. The SSA has recently updated its ruling on evaluating symptoms in disability cases. The new SSR 16-3p eliminates the use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p. This Court agrees with the Northern District of Illinois' conclusion that because the SSA specifies that the new ruling is intended to "clarify" the existing rules, and because the prior ruling and the new ruling are substantially consistent, that the Court should evaluate Plaintiff's credibility argument under the language of the new SSR 16-3p. *See Herrold v. Colvin*, 2016 WL 1660495, p. 9 (N.D. Ill. 2016); *Damit v. Colvin*, 2106 WL 3568088, p. 8-9; *see also Farrar v. Colvin*, 2-16 WL 3538827, n. 3 (noting that "While the new policy statement does apply to matters on appeal, the Court is also bound by case law concerning the same regulatory process under the "credibility" analysis of the former SSR 96-7p").

Under the new SSR 16-3p:

"[T]he ALJ must still consider all of an individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record. In assessing symptoms, the ALJ should consider elements such as "objective medical evidence of the impairments, the daily activities, allegations of pain and aggravating factors, functional limitations, and treatment (including medication)."

Plaintiff's argument as to the ALJ's credibility finding is not completely clear, but it appears that Plaintiff disagrees with the ALJ's consideration of Plaintiff's occasional driving, and Plaintiff's acknowledgment that he occasionally drinks alcoholic beverages. The Court first clarifies that the ALJ did not find that because Plaintiff drinks, he is not credible. Instead, the ALJ noted that Plaintiff had inconsistent statements in the record regarding these activities and therefore his subjective statements as to his limitations were less reliable.

Under the new SSR 16-3p, "subjective symptom evaluation is not an examination of the individual's character." The ALJ cannot rely solely on Plaintiff's inconsistent statements to discredit Plaintiff's subjective statements. Instead, the regulations direct the ALJ to consider the objective medical evidence, Plaintiff's daily activities, functional limitations, and treatment.

Here the ALJ looked beyond Plaintiff's inconsistent statements. The ALJ specifically considered the consistency of the objective medical evidence with Plaintiff's subjective complaints. (R. 37.) The ALJ noted that Plaintiff is able to exercise, his blood pressure is well controlled when medicated, he has normal cardiac functioning, and a normal ability to walk and stand. *Id.* The ALJ specifically accounted for Plaintiff's fatigue resulting from his blood pressure medication by limiting him to sedentary and light exertion work. *Id.* The ALJ also limited his exposure to hazards due to his symptoms of hypertension and side effects of his medications. *Id.*

Therefore, the Court finds that the ALJ supported her credibility finding with good reason.

**IV.    Conclusion**

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment **(#10)** be **DENIED**, Defendant's Motion for Summary Judgment **(#14)** be **GRANTED**, and that the decision to deny benefits be affirmed.  The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).


ENTERED this 6th day of April, 2017.


                    s/ERIC I. LONG
          UNITED STATES  MAGISTRATE JUDGE